IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| In re:<br><br>Steven Rosenschein,<br><br>     Debtor. | Civil Action No.  4:22-CV-3653-JFA |
| In re:<br><br>Charles Pernell Prophet and Shirley Ann Prophet,<br><br>     Debtors. | Civil Action No. 3:22-CV-3647-JFA |
| In re:<br><br>Christine Marie Naughton,<br><br>     Debtor. | Civil Action No.  9:22-CV-3682-JFA |
| Benjamin R. Matthews & Assoc.<br><br>     Appellant,<br><br>v.<br><br>John P. Fitzgerald, III,<br>United States Trustee,<br><br>     Appellee. | **ORDER AND OPINION** |

  This matter is currently before the court on Benjamin R. Matthews & Associates ("Appellant" or "Matthews") appeal from the Amended Order and Judgment by the Honorable David R. Duncan of the United States Bankruptcy Court for the District of South Carolina which granted in part and denied in part Appellee, John P. Fitzgerald, III, United

1

States Trustee's ("Appellee" or "UST") Motion for Review of Attorney Conduct. (ECF No. 6).[1] After careful consideration and for the reasons discussed below, this Court affirms the Bankruptcy Court's Order. (CSP BK Dkt. No. 93; SR BK Dkt. No. 80; CN BK Dkt. No. 77).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

There are three appeals before this Court concerning the fee structure and related agreement Appellant utilizes with his clients in bankruptcy cases. Appellant represents debtors filing for relief under Chapter 7 of the Bankruptcy Code. Traditionally, a debtor client would hire Appellant to represent them by entering into an agreement and paying a flat fee of $2,350.00 up front (including the filing fee) which covered Appellant's services for the majority of the case. (ECF No. 9-1 at 59). For any supplemental post-filing services, Appellant would charge his clients $300.00 per hour for attorney time, and $150.00 per hour for paralegal time.

However, beginning in or around April of 2020, Appellant began to offer his clients the option to bifurcate fee arrangements into pre-filing and post-filing services. *Id.* at 57. Under the bifurcated approach, clients would first enter into a pre-filing agreement which covered the tasks necessary to initiate the case.  Once the case was filed, the pre-filing

---

[1] Citations to the record herein contain the relevant docket number preceded by identifying letters. For example, "CV" indicates that the document is listed on the docket in Civil Case No. 22-cv-3653-JFA which is related to Civil Case Nos. 22-3682 (Naughton) and 22-3647 (Prophet). "CSP" indicates the documents are listed on the docket in  the Bankruptcy case of Charles and Shirley Prophet with Case No. 20-03131. "SR" indicates the document is listed on the docket in the Bankruptcy case of Steven Rosenschein with Case No. 20-03171-dd. "CN" indicates the document is listed on the docket in the Bankruptcy case of Christine Marie Naughton with Case No. 20-03293-dd.

agreement provided the client with the option to proceed *pro se*, hire another lawyer, or continue with Appellant under a second agreement known as the "post-filing agreement." *Id.* at 59.  As the name indicates, the post-filing agreement covered the services Appellant would provide for the remainder of the case. Although the bifurcated option involved two separate agreements for pre-petition and post-petition services, significantly, the pre-filing agreement provides:

> "[if] you [the debtor] choose the File Now Pay Later option, you further represent that you are not doing this with the intention of having the law firm simply file your case and then withdraw, but instead to facilitate you making payments over time for your attorney fee so that you can have an attorney represent you through the entire chapter 7 process."

*Id*. at 373.

The bifurcated option offered clients an engagement structure that allowed them to pay either $500 pre-filing (for filing fee and out-of-pocket fees) or pay $0 down. Then, clients could pay the remainder of Appellant's fee in installments post-filing. The clients who choose this option are advised that it is more expensive than the traditional flat fee engagement. *Id*. at 58; *See also Id*. at 368.

To fund the bifurcated approach, Appellant entered into a Line of Credit and Accounts Receivable Management Agreement with third party, Fresh Start Funding ("FSF"). *Id*. at 61. Pursuant to the agreement, FSF provided Appellant with a line of credit to cover the costs associated with the cases utilizing the bifurcated fee arrangement. FSF advances Appellant 65% of the post-petition attorneys' fee for each bifurcated client, deposits 10% into a holdback account from which any delinquent payments or breach of obligations are offset, and it retains the remaining 25% of the post-petition fees for itself.

3

*Id.* at 61-62. Subsequently, FSF collects the payments directly from the clients which it applies to the balance owed on Appellant's line of credit. *Id.*

The three appeals before this Court arise from Chapter 7 cases that Appellant filed using bifurcated fee agreements. Pursuant to their respective agreements, Charles and Shirley Prophet ("Prophet" Or "CSP") paid $1,200.00 for pre-filing services and $1,200.00 for post filing services *Id.* at 65; Steven Rosenschein ("Rosenschein" or "SR") paid $500.00 for pre-filing services and $2,060.00 for post-filing services *Id.* at 67; and Christine Naughton ("Naughton" or "CN") paid $0.00 for pre-filing services and $2,800.00 for post-filing services. *Id.* at 62-63.

In September of 2020, UST filed a motion in each of the above referenced cases for review of attorney conduct based on Appellant's bifurcated fee arrangements. *Id.* at 22-42. UST challenged whether the practice of bifurcating the engagements violated Local Rule of the Bankruptcy Court for South Carolina ("SC LBR") 9011-1(b); whether the fees charged in each of these cases was reasonable; and whether the bifurcated fee agreements were misleading or inadequate in violation of 11 U.S.C. §§ 526 and 528.

In March of 2021, the Bankruptcy Court entered an Order ("2021 Order") that concluded, as a matter of law, that the bifurcated engagements violated the Local Rule. (CSP ECF No. 50; SR ECF No. 43; CN ECF No. 41). Accordingly, the Bankruptcy Court invalidated the agreements and disallowed all compensation to Appellant. On appeal, the Honorable J. Michelle Childs at the U.S. District Court for the District of South Carolina reversed the holding of the Bankruptcy Court and remanded the case for further

4

proceedings. *Id.* at 72-90; *See also* Order and Opinion, Case No. 3:21-cv-01080-JMC (March 14, 2022) (ECF No. 5) (hereinafter, the "DSC Opinion").

On remand, on October 6, 2022, the Bankruptcy Court entered another Order ("2022 Order") which held that the fees Appellant charged his clients in these cases were excessive, and further, that his clients did not give informed consent to the representation because the disclosures contained in his fee agreements were inadequate. *Id.* at 91-115. Once again, the court disallowed payment for all post-filing fees and ordered Appellant to return such fees, less any filing fees or out of pocket costs to the clients. *Id.*

Now, Appellant comes before this Court for a second time to appeal the Bankruptcy Court's 2022 Order regarding its findings as to his bifurcated fee agreements in each of these cases.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 158(a), U.S. district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. See 28 U.S.C. § 158(c)(2). The bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. *Dunes Hotel Assocs. v. Hyatt Corp.,* 245 B.R. 492, 495 (D.S.C. 2000). A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. Hall,* 664 F.3d 456, 462 (4th Cir. 2012) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A bankruptcy court's conclusions of law are subject to de novo review. *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *In re K &*

*L Lakeland, Inc.*, 128 F.3d 203, 206 (4th Cir. 1997). "By definition, de novo review entails consideration of an issue as if it had not been decided previously." *United States v. George,* 971 F.2d 1113, 1118 (4th Cir. 1992), as amended (Aug. 12, 1992). Mixed questions of law and fact are reviewed under a hybrid standard, "applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond,* 80 F.3d 895, 905 (4th Cir. 1996).

## III.    DISCUSSION

Appellant presents mixed questions of law and fact: (1) Whether the Bankruptcy Court abused its discretion in finding that the fees charged in these cases were excessive and (2) Whether the Bankruptcy Court erred in finding the bifurcated fee agreements were void and unenforceable because they failed to provide adequate disclosures in accordance with Sections 526 and 528 of the Bankruptcy Code.[2]  This Court will address each of the Bankruptcy Court's holdings in turn below.

### A.  The Bankruptcy Court Did Not Abuse Its Discretion in Finding Appellant's Fees were Excessive

The Bankruptcy Court held Appellant's fees were excessive and ordered Appellant to return to the debtors all fees paid post-petition under the bifurcated agreements.

---

[2] UST asserts there is a third issue before this Court which is whether the Bankruptcy Court erred in holding that the bifurcated agreements in these cases created a single pre-petition obligation such that any debt for fees not paid by the date of filing the petition were discharged by bankruptcy. This Court recognizes the Bankruptcy's holding in this regard and finds it falls under the scope of the second issue presented by Appellant for consideration.

As an initial matter, the Bankruptcy Court has discretion to determine whether an attorney's fees are reasonable in a particular case. *See In re Goodbar,* 456 B.R. 644, 648 (Bankr.W.D.Va.2011); *See also* 11 U.S.C. § 329 of the Bankruptcy Code ("If such compensation exceeds the reasonable value of any such services, the [bankruptcy] court may cancel such agreement, or order the return of any such payment, to the extent excessive…"). This Court reviews the Bankruptcy Court's decision regarding attorneys' fees for an abuse of discretion, which occurs where "the bankruptcy court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Furlow v. Macdonald*, 2021 WL 2982864, at *7 (Bankr. D.S.C. July 15, 2021) citing *In re Berry*, 2014 WL 4471438, at *1 (E.C. Mich. Sept. 4, 2014).

The Bankruptcy Court begins its analysis by comparing the fees Appellant charges in his bifurcated cases to the fees charged in a traditional bankruptcy case in which the clients pay a fixed flat fee up front for Appellant's services.  First, Appellant argues the Bankruptcy Court erred by comparing these two fee arrangements as opposed to utilizing the Fourth Circuit's lodestar method to determine the reasonableness of his fees. Appellant made the same argument regarding the lodestar method to the Bankruptcy Court in his initial briefing and the Bankruptcy Court rejected this approach finding it lacked the necessary information to complete the lodestar analysis. *See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (To determine the lodestar figure, the Court multiplies "the number of reasonable hours expended times a reasonable rate.").  Because the instant agreements were flat fee arrangements, Appellant did not record the number of hours he worked on each case making it impossible for the Bankruptcy Court to conduct such analysis.

Therefore, this Court finds no error in the Bankruptcy Court's failure to perform the lodestar method to evaluate Appellant's fees.

Next, Appellant argues that the Bankruptcy Court's method of comparing the instant fees to the "standard" fee of $1,750.00 charged in traditional flat fee bankruptcy cases is misplaced. Appellant explains that the "standard" fee of $1,750.00 for a traditional bankruptcy case put forth by the Bankruptcy Court does not include the filing fee, credit counseling fee, or credit reporting fee which totals $403.00 and is included in the fees charged for the instant cases.[3] Thus, while the fees charged in the instant bifurcated cases may be higher, Appellant argues it includes more than simply his services. See (ECF No. 8 at 10-11) ("…the 2022 Order compares the total of Mr. Matthews' attorney fee plus filing fee plus credit counseling fee plus credit report fee, to the $1,700 low end of the customary range of attorney fees only (not attorney fee, +,+,+)…").

Appellant's argument would prevail if it was factually correct. However, as UST points out, when the included costs referenced above (filing fee, credit counseling fee, and credit reporting fee) are taken out of the bifurcated fee, it becomes clear that Appellant still charged his bifurcated clients more than the standard fee of $1,750.00 which is charged in a traditional flat fee case. Specifically, Appellant charged the Prophets $1,997.00, Rosenschein, $2,157.00, and Naughton $2,397.00. Significantly, these fees purportedly only cover Appellant's post-petition services as opposed to the entire case (including pre-

---

[3] With the addition of the court filing fee, credit report fee, and the cost of the statutorily required pre-petition credit counseling course, the total charged by Appellant to file a chapter 7 case was $2,153. (ECF No. 9-1 at 104, n. 13).

and post-petition services) which the $1,750.00 covers in a traditional flat fee case. Additionally, the Bankruptcy Court also found these fees also exceeded fees charged by other chapter 7 attorneys in the area for pre- and post-petition services. *See In re Welch*, 647 B.R. 518, 526 (Bankr. D.S.C. 2022) ("In determining what constitutes reasonableness compensation, the Court may rely on its own expertise regarding reasonable compensation and review fees charged by and awarded to other attorneys who represent debtors in chapter 13 cases in this District.").

Rather than comparing the instant bifurcated fee agreements to the fees Appellant charges in traditional flat fee cases or to fees charged by other chapter 7 lawyers, Appellant argues the reasonableness of the fees should be determined with reference to the standard imposed by § 330. See 11 U.S.C. § 330(a)(3). To determine the amount of reasonable compensation to be awarded, §330(a)(3) provides the court shall consider "the nature, the extent, and the value of such services taking into account all relevant factors…" The relevant factors include:

(a) Time spent on such services;
(b) The rates charged for such services;
(c) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, a case under this title;
(d) Whether the services were performed within a reasonable amount of time commensurate with complexity, importance, and nature of the problem, issue, or task addressed;
(e) With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(f) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3)(f). Although Appellant argues the Bankruptcy Court erred by failing to consider these factors, Appellant does not explain how these factors weigh in his favor. Additionally, Appellant has not presented evidence as the time spent on the services provided in these cases or evidence of fees for comparable work for this Court to use to assess these factors in regards to the fees in these cases. Significantly, the Bankruptcy Court did compare Appellant's fees for post-petition services to the fees of other chapter 7 attorneys in the area, and ultimately, it found that the instant fees exceeded the customary fees charged by other chapter 7 lawyers for pre- and post-petition services. *See In re Welch*, 647 B.R. 518, 526 (Bankr. D.S.C. 2022) ("In determining what constitutes reasonableness compensation, the Court may rely on its own expertise regarding reasonable compensation and review fees charged by and awarded to other attorneys who represent debtors in chapter 13 cases in this District.").  Appellant criticizes the Bankruptcy Court's use of $1,700.00 as a customary fee charged by other chapter 7 lawyers, and its finding that this number is on the high end of the range of fees for this type of work.  However, the Bankruptcy Court made clear that the point is not necessarily the amount Appellant is charging his clients, but rather, the fact that he is supposedly waiving the fee for some pre-petition services and still charging more than $1,700.00 for post-petition services, alone. The Bankruptcy Court's point is well taken, and this Court agrees that Appellant's fees are excessive for post-petition services.

Appellant's final argument is an attempt to persuade this Court reverse the Bankruptcy Court's Order regarding its ruling he be required to return all the fees he received to each client. Appellant argues he should be allowed to keep the amount of fees

determined to be reasonable while disgorging only the amount determined to be in excess. However, the Bankruptcy Court was within its discretion under section 329(b) when it determined that Appellant should be disallowed all post-petition fees from the instant cases. 11 U.S.C. § 329(b) ("If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement . . . ."). As the UST pointed out, as a discretionary decision, the Bankruptcy Court's decision can only be disturbed on appeal if the reviewing court is "convinced that no reasonable person could agree with the bankruptcy court." *In re Geraci*, 138 F.3d 314 (7th Cir. 1998). Here, this Court finds that the Bankruptcy Court's decision was reasonable under the facts of the instant cases. However, additionally, even this Court were to take issue with the Bankruptcy Court's ruling on this issue, it would still be constrained to disallow Appellant any fees because of this Court's findings regarding the bifurcated agreements compliance with section 526 and 528 of the Bankruptcy Code.

Therefore, this Court finds Appellant failed to demonstrate the Bankruptcy Court relied on errors of fact, improperly applied the governing law, or used an erroneous legal standard when reaching its decision regarding Appellant's fees. Thus, this Court affirms the Bankruptcy Court's decision finding Appellant's fees to be excessive.

### B. The Bankruptcy Court Did Not Err in Finding the Fee Agreements Void and Unenforceable Because They Failed to Include Adequate Disclosures

The Bankruptcy Court held that Appellant's bifurcated fee agreements were void and unenforceable for failure to comply with the disclosure requirements set forth in sections 526 and 528 of the Bankruptcy Code. Additionally, the Bankruptcy Court also

found the pre-petition agreement and post-petition agreement to be a unitary agreement, the terms of which the debtor clients agreed to prior to Appellant initiating their case. Consequently, the post-petition filing fees should properly be considered a pre-petition obligation which was discharged upon the filing of each debtor client's case. *See* 11 U.S.C. § 524(c) (enjoining any act to collect or recover a discharged debt).

Section 526 of the Bankruptcy Code requires "debt relief agencies," which is defined to include debtors' attorneys and their law firms, to comply with statutorily imposed standards of professional conduct. 11 U.S.C. 526(a)(1)—(4); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236–38 (2009). For example, a bankruptcy attorney must not "make any state…in a document filed in a case or proceeding…that is untrue or misleading" or further, "misrepresent to any assisted person or prospective assisted person…(a) the services that such agency will provide to such person or (b) the benefits and risks that may result if such person becomes a debtor…" § 526(a)(2 & (3)(A) & (3)(B).

Additionally, Section 528(a)(1) requires a debt relief agency to provide clients with a written contract within five days of first providing services but before filing a bankruptcy petition. 11 U.S.C. § 528(a)(1). The contract must explain "clearly and conspicuously" the services that the attorney will provide, the fees for those services, and the terms of payment. *Id.* A contract for bankruptcy assistance that does not comply with these provisions is void and unenforceable. *See* 11 U.S.C. § 526(c)(1).

The primary issue is whether the bifurcated fee agreements failed to comply with sections 526 and 528 of the Bankruptcy Code thereby rendering them void and

unenforceable. Because the consideration of this issue requires the application of these code sections to the instant bifurcated agreements, this Court reviews this question *de novo*. *See* 28 U.S.C. § 158(c)(2) (The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding); *See In re Merry–Go–Round Enters., Inc.,* 180 F.3d 149, 154 (4th Cir.1999) (review of interpretation of the bankruptcy code is *de novo*); *Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co.,* 89 F.3d 243, 246 (5th Cir.1996) ("*[D]e novo* review of legal questions includes the interpretation and application of indemnity agreements.") *Traxys N. Am. LLC v. Concept Min. Inc.,* 510 F. App'x 262, 268 (4th Cir. 2013) citing *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 198 (2d Cir. 2003) (Although courts review the reasonableness of an attorneys' fee award for abuse of discretion, we review the court's interpretation of the Contract—i.e., whether it permits recovery of attorneys' fees and other costs—*de novo*.").

## 1. The Bifurcated Agreements Do Not Comply with Section 528

Appellant's main argument is that his bifurcated agreements fulfill the disclosure requirements of section 528, and the Bankruptcy Court's decision was influenced by its bias against such a fee structure.

The disclosure requirements set forth in section 528 are relatively simple and straightforward as it provides the bankruptcy attorney must provide the debtor client with a contract which "clearly and conspicuously" explains "the services [the attorney] will provide" and "the fees or charge for such services, and the terms of payment…" § 528(a)(1)(A) & (B).

13

On the other hand, the UST refers to the deficiencies outlined by the Bankruptcy Court to argue the pre-filing agreements failed to comply with these requirements in the following ways:

(1) it fails to accurately describe the fees charged and supplemental services provided in cases in which debtors paid up front during the same time period that the Firm was using the bifurcated agreements;

(2) it fails to accurately state the mark-up for the "File Now Pay Later" option;

(3) it states that the Firm would continue as attorney of record until relieved by court order, while excluding legal services necessary to provide adequate legal representation after the filing of the petition;

(4) it fails to clarify what services the Firm would continue to provide if a debtor failed to sign the Post-Filing Agreement and how the process to withdraw as counsel would work;

(5) it states the cost of the legal services as $0 or $500 (or, in the Prophets' case, $1,200) but sets forth payment terms involving payments to be made over 52 weeks, 26 bi-weeks, 24 semi-months, or 12 months;

(6) it states that the Firm performs additional work to split the engagement, but it fails to state the additional work required and;

(7) it fails to specifically set forth what information the Firm would share with Fresh Start.

(ECF No. 9 at 37-38).[4] On *de novo* review, the Court agrees with the Bankruptcy Court's conclusion that the bifurcated agreements fail to provide adequate disclosures to the debtor clients in accordance with sections 528 and 526. The Bankruptcy Court's Order details the

_____

[4] Although these issues are the same as those articulated by the Bankruptcy Court in its Order, this Court's review is *de novo* which requires this Court to consider the parties' arguments as if they were made for the first time.

numerous ways in which the pre-filing agreement and post-filing agreements are misleading, which thus constitute prohibited misrepresentations in violation of these sections. While this Court will not repeat all the ways these agreements mislead the debtor clients, it will discuss a few it sees as particularly noteworthy.

Beginning with the fifth issue identified by the Bankruptcy Court and reiterated by the UST, this Court agrees with the Bankruptcy Court that is particularly confusing that the pre-filing agreement which allegedly applies only to tasks necessary to initiate the case and requires zero to little money down sets forth payment schedules in terms of 52 weeks, 26 bi-weeks, 24 semi-months, or 12 months. Even more problematic, the payment schedule should apply to the total amount to be paid for Appellant's post-filing services, yet it is contained in the pre-filing agreement. Although Appellant may retort that he was ensuring the debtor clients were fully apprised of the total cost for his post-filing services, this argument fails in light of Appellant's other arguments that the debtor client has the option to proceed *pro se* or hire another lawyer after the pre-filing tasks are completed rendering this payment schedule—which should only apply to post-filing services—even more confusing.

Additionally, this Court finds the difference in the amount paid between the three named debtor clients problematic and evidence of inadequate disclosure. The pre-filing agreement does not disclose the cost of a down payment for Appellant to initiate the case or the total cost of all services as would be required under the post-filing agreement. Instead, the pre-filing agreement contains blank spaces next to these provisions allowing Appellant to fill them in as needed for each client. Appellant testified in his deposition he

15

verbally offers to his clients the option to pay $0 or $500.00 as a down payment but this testimony is insufficient for the purposes of section 528 because it is not reflected in the pre-filing agreement. The omission of this option along with the total cost of Appellant's services may leave clients confused as to how much they can or have to pay as evidenced by the Prophets' case in which they paid $1,200.00 for a down payment. Therefore, the Court agrees with the Bankruptcy Court and finds that the pre-filing agreement is deficient in this regard in violation of section 528.

The second deficiency identified by the Bankruptcy Court is also significant. The pre-filing agreement does not explain the markup between the "pay before you file" option ($2,350.00) and the "file now pay later" option (at most $2,800.00(. Although the pre-filing agreement states that the debtor clients who elect the bifurcated or "file now pay later" option will pay more, the pre-filing agreement does not explain the reason for the upcharge. The short provision entitled "Higher Attorney Fee" is insufficient to explain the upcharge as it states "the law firm performs additional work to split your engagement" but does not explain the additional work required when a debtor client selects this option. Additionally, the pre-filing agreement does not disclose how much more the debtor client will pay under the bifurcated option and because each debtor client was charged a different amount, this Court also does not have a way of figuring out the exact difference.

Finally, the pre-filing agreement and Appellant seem to assert that the debtor client receives more services under the bifurcated option as an additional reason for the increase in price. However, this Court is not so sure. The only "additional services" the debtor client appears to receive are the "supplemental services" which are included in the bifurcated

16

option. However, "pay before you file" provision does not include these services and seems to indicate these services may not be necessary for every case. *See* (ECF No. 8-1 at 352) ("if you require any of the Supplemental Post-Filing Services described above you will be required to pay additional legal fees"). Further, if the services in the pre-filing agreement are supposed to be covered by the down payment, then the cost of the remaining services performed post-filing should be less, not more, than the total cost of a non-bifurcated case. While the pre-filing agreement advertises the bifurcated option as a "bang for your buck," the debtor client appears to be receiving less services for more money.

Therefore, this Court finds the pre-filing agreement deficient in this regard in violation of section 528.

Moving to the third and fourth identified deficiencies, Appellant argues this may be the most erroneous of the conclusions espoused by the UST and Bankruptcy Court. Appellant argues the pre-filing agreement specifically provides the following:

> If you choose to represent yourself or to hire another attorney to represent you (either of which are completely up to you) you will not owe us anything additional. We will ask the bankruptcy court to allow us to withdraw as your lawyer in accordance with the bankruptcy rules, **but we will continue to represent you in the case and perform all necessary services until and unless the bankruptcy court allows us to withdraw.**

(ECF No. 8 at 21) (emphasis added). Appellant asserts the bold provision is the most significant because it evidences that he does not leave the client out to dry as the UST attempts to suggest. Instead, Appellant argues it adequately discloses the services offered to the client for this stage of the litigation and advises the client as to the process which will ensue if the client chooses to proceed *pro se* or with another lawyer after the suit is

initiated. Regardless, Appellant contends the agreement provides for the client's protection until and unless the Bankruptcy Court allows his withdrawal. Although this Court recognizes the pre-filing agreement's provision that Appellant will perform all necessary services until the Bankruptcy Court allows Appellant to withdraw, "this representation rings hollow without the accompanying disclosure that the bankruptcy court would not permit such motion for withdrawal even if the client fails to pay any fees, absent identified 'good cause' under L.B.R. 9010-1(c)(5)." *See In re Suazo*, 2023 WL 1961198, at *12 (D. Colo. Feb. 13, 2023) (holding the pre-filing agreement's failure to disclose the process and risks associated with withdrawal was a "material omission" for purposes of section 526(a)(3)).

While Appellant may be correct that this provision is not deficient according to section 528, like the court in *In re Suazo*, this Court finds it is deficient under section 526(a)(3)(B). *See* § 526(a)(3)(B)(an attorney "shall not—misrepresent to any assisted person…the benefits and risks that may result if such a person becomes a debtor under this title…"). The pre-filing agreement does not explain the process the client will be required to go through for the withdrawal, the time needed to allow for the withdrawal, or the risk that the Bankruptcy Court may not allow Appellant to withdraw. Furthermore, the agreement does not inform the debtor clients as to what these "necessary services" might be and it is unclear whether they would include, for example, any of the post-filing services, some of which may be required relatively soon after the filing of the case and before the Bankruptcy Court might rule on a motion to withdraw appearance. Therefore, this Court finds the bifurcated agreements are also deficient in this regard for purposes of section 526.

Therefore, this Court finds the pre-filing and post-filing agreements do not comply with the material provisions of Section 528 and thus, are void and unenforceable. *See* 11 U.S.C. § 526(c)(1).

## 2. The Bifurcated Agreements Do Not Comply with Section 526

After completing a *de novo* review of the record as well as the parties' arguments on this basis, this Court finds the pre-filing and post-filing agreements do not comply with Section 526(a)(2) by making untrue or misleading statements in its disclosures to the Court regarding compensation.

Bankruptcy Rule 2016 requires every attorney representing debtors to file the statement required by 11 U.S.C. § 329 regarding Disclosure of Compensation Paid or to be Paid within one year before the date of filing the petition for services rendered or to be rendered in contemplation or in connection with the case and the source of the compensation. These disclosures are mandatory and not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M. D. Fla. 2002).

Section 526 provides that a debtor's attorney may not make any statements or advise a debtor to make any statement in a document filed with the court that are untrue or misleading or that the agency, upon the exercise of reasonable care, should have known to be untrue or misleading. 11 U.S.C. § 526(a)(2). Any contract for bankruptcy assistance that does not comply with the material requirements of Section 526 "shall be void and may not be enforced." 11 U.S.C. § 526(c)(1). *See also id.* § 526(c)(2)(A) ("Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges . . . that such debt

relief agency has received . . . if such agency is found, after notice and a hearing, to have . . . intentionally or negligently failed to comply with any provision of this section.").

The Bankruptcy Court found that Appellant's fee disclosures submitted to the Bankruptcy Court were deficient in setting forth from whom Appellant was receiving payment and whether Appellant was sharing compensation with another party outside of the firm. In the first disclosures of compensation filed in all three cases, UST argues Appellant did not accurately disclose the source of compensation to be paid to the firm. In each case, Appellant marked "?" by both "Debtor" or "other" as to the source of compensation.

After the UST filed its Motion to Review Fees in the Bankruptcy Court, Appellant filed amended disclosures which represented that the debtors were the source of the Firm's post-petition compensation. However, for accuracy, UST argues Appellant needed to disclose its source of compensation as "Fresh Start Funding" and not, the debtors. Additionally, UST argues the forms were inaccurate because they omit the post-petition payment obligations from their payment schedules.

In response, Appellant argues that the forms are accurate because his client, and not Fresh Start, were the source of his compensation because Fresh Start provided him with a loan which he was obligated to repay. Appellant argues the disclosure obligations contained in section 526 do not require a broader explanation about his firm's creditors, loan transactions, and terms of how its debts would be repaid. Therefore, Appellant contends his forms are accurate and the Bankruptcy erred in its conclusion that his forms violated the disclosure requirements contained in section 526.

Appellant's argument is undercut by the fact the debtor clients do not pay directly pay Appellant. Instead, they remit payment for their post-filing fees to Fresh Start. Then, Fresh Start can sue the debtor clients for collection if they default on any of their payments. Fresh Start applies their payments to the amount owed under the line of credit extended to Appellant. This arrangement is not explained in the disclosure to the Court. *See In re Baldwin*, 640 B.R. 104, 122 (Bankr. W.D. Kt. 2021) (analyzing case involving Fresh Start and finding that attorney's disclosures to court were deficient for failing to disclose his use of Fresh Start as a financing device for his law practice). Further, the disclosure also fails to explain that Appellant does not retain the full post-petition fee. *Id.* (also finding attorney's disclosures to bankruptcy court which omitted information regarding Fresh Start Funding 25% fee to be deficient for purposes of section 526). As the Agreement between Appellant's firm and Fresh Start indicates, 25% of the post-petition fee is retained by Fresh Start for its services.[5] Finally, the Bankruptcy Court found, and this Court agrees that each of the three debtor clients omitted their post-petition payment obligation from their expense schedules which Appellant filed with the Bankruptcy Court.

For these reasons, this Court finds that the disclosures submitted to the Bankruptcy Court in each of the three cases were deficient and in violation of section 526.

---

[5] For example, of the $2,800.00 Naughton agreed to pay post-petition, Appellant receives $1,820.00 and Fresh Start receives $700.00 plus 10% of the holdback.

### 3. The Pre-Filing Agreement and Post-Filing Agreement are a Unitary Agreement

The Bankruptcy Court found the pre-filing agreement and post-filing agreement are part of a unitary arrangement for charging and collecting attorneys' fees. As a result, the fees Appellant charged the named debtor clients for post-petition services should be considered a dischargeable debt because they were agreed to prior to the filing of their petitions. *See* 11 U.S.C. 727(b) (discharges a debtor from "all debts that arose before the date of the order for relief…").

In response, Appellant argues the pre-filing and post-filing agreements are independent in nature because the pre-filing agreement contains express language advising the clients that they may choose whether to sign the post-filing agreement. If they choose not to sign the post-filing agreement, and instead proceed pro se or with another lawyer, then the clients would not owe Appellant any additional fees. And significantly, Appellant points out he would not be able to bring a post-petition claim against the clients for such fees unless they signed the post-filing agreement.

However, in *In re Suazo*, the appellant presented a similar argument and the district court was unpersuaded. 2023 WL 1961198, at *12 (D. Colo. Feb. 13, 2023). The district court analyzed the pre-filing agreement's language and found that it did not present the post-filing agreement as merely an option for the clients to consider. Instead, it required the clients to represent they were not signing the pre-filing agreement "with the intention of having the law firm simply file [their] case and then withdraw, but instead to facilitate

[them] making payments over time for [their] attorney fee so that [they] can have an attorney represent [them] through the entire chapter 7 process." *Id.*

This is the exact same language from the pre-filing agreements in this case. *See* (ECF No. 9-1 at 373). As the district court held in *In re Suazo*, this representation "is not an optional box to check or not check under the pre-petition agreement. The client may not enter the File Now Pay Later option *unless* [they] also make a legal representation that [they] intend[] to sign the post-filing agreement." *Id.* Additionally, the debtor clients were given a copy of the post-filing agreement during the pre-petition stage. Although they were not required to sign the post-filing agreement pre-petition, they were required to agree to its terms as the pre-filing agreement states: "You must read, understand, and agree to the Post-Filing Agreement stated below before your Pre-Filing Agreement will be considered legally binding." (ECF No. 9-1 at 156, 176-77, 391). Appellant makes much of the fact that the clients are not required to actually sign the post-filing agreement until after the petition is filed and they choose to continue with Appellant as their attorney. However, this Court finds the timing of when the clients sign the post-filing agreement to be less relevant when the clients are required to agree to the post-filing agreement's terms prior to the petition being filed or the agreement being signed.

Given this evidence, Appellant's argument regarding the independent nature of these two agreements is unavailing. Accordingly, this Court agrees with the Bankruptcy Court and finds that Appellant's purported bifurcated structure is illusory as the pre-filing and post-filing agreements are a unitary arrangement.

### 4. Appellant's Policy Arguments in Favor of Bifurcated Agreements

Finally, Appellant presents compelling policy arguments in favor of the bifurcated structure utilized in these three cases. Appellant details the pitfalls of the bankruptcy process, especially for debtors who decide to proceed *pro se*, and he cites to several studies for support. While this Court recognizes the difficulty debtors face in retaining counsel to initiate a Chapter 7 case, this Court "cannot legislate and cannot just make up a new policy framework for Chapter 7 debtor's counsel fees." *Id.* 642 B.R. at 869.  Appellant may very well be correct that the bifurcated fee structure presented in this case is the solution to the many problems plaguing Chapter 7 debtors. However, this Court cannot make such a finding. Therefore, this Court centers its decision solely on the issues presented in this case and the law applicable to such issues.

### IV.    CONCLUSION

For the reasons set forth above, and having carefully considered the briefs, the record, and the applicable law, this Court AFFIRMS the Amended Order issued by the Bankruptcy Court on October 6, 2022.[6] In accordance with the Bankruptcy Court's Amended Order, Appellant is required to return to the Debtors all fees paid post-petition under the subject Bifurcated Agreements, less any filing fees or out-of-pocket costs, within thirty (30) days of the date of the entry of this Order.

---

[6] CSP Amended Order at ECF No. 93 in Case No. 20-0313; SR Amended Order at ECF No. 80 in Case No. 20-03171; CN Amended Order at ECF No. 77 in Case No. 20-03293.

IT IS SO ORDERED.

May 8, 2023
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge